**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **JOEL N. MASLOW and** | § | |
| **CHRISTINE C. ROBERTS,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:26-cv-03047** |
| | § | |
| **GENEONE LIFE SCIENCE, INC.,** | § | |
| **VGXI, INC., and INSPERITY PEO** | § | |
| **SERVICES, L.P.** | § | |
| **Defendants.** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiffs, Joel N. Maslow and Christine C. Roberts, bring this complaint for breach of contract, violations of the Fair Labor Standards Act and for damages.

**PARTIES**

1.      Plaintiff Joel Maslow ("Maslow") is an individual residing at 1534 46th Avenue SW, Seattle, Washington 98116.

2.      Plaintiff Christine Roberts ("Roberts") is an individual residing at 6993 Sell Road, Zionsville, Pennsylvania 18092.

3.      Defendant GeneOne Life Science, Inc. ("GeneOne") is a Republic of Korea corporation who is registered to and doing business in the State of Texas. GeneOne may be served through its agent for service of process, Young K Park, at 2700 Research Forest Drive, The Woodlands, Texas 77381.

4.      Defendant VGXI, Inc. ("VGXI") is corporation organized under the law of the State of Delaware and is registered to and doing business in the State of Texas.   VGXI may be served through its agent for service of process, Registered Agents Inc., 5900 Balcones Drive, Suite 100, Austin, Texas 78731.

5.      Defendant Insperity PEO Services, L.P. ("Insperity") is partnership organized under the law of the State of Delaware, with its principal place of business located at 19001 Crescent Springs Dr., Kingwood, Texas 77339.   Insperity may be served through its agent for service of process, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## JURISDICTION AND VENUE

6.      The Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and complete diversity exists between the parties: Maslow, a citizen of Washington; Roberts, a citizen of Pennsylvania; VGXI and Insperity, citizens of Delaware; and GeneOne, a citizen of Korea.

7.      This Court also has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' claims under the Fair Labor Standards Act arise under the laws of the United States.

8.      Defendants are, and at all relevant times were, an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

9.      Defendants operate a business that regularly engages in interstate commerce, including but not limited to: purchasing goods, equipment, and materials from out-of-state suppliers; shipping and distributing products across state lines; and utilizing interstate channels of communication, banking, and transportation in the ordinary course of business.

10.     At all relevant times, Defendants had an annual gross volume of sales made or business done in excess of $500,000, exclusive of excise taxes at the retail level that are separately stated.

11.      Venue is proper in Southern District of Texas ("District") because a substantial part of the events or omissions giving rise to the claims occurred in this District and because Defendants transacted business in, are found in, and/or reside in this District.

### GENERAL ALLEGATIONS

12.     Defendants VGXI and GeneOne (collectively "Biotech Defendants") are in the business of providing contract manufacturing of cGMP nucleic acid-based products including DNA plasmids and mRNA.

13.     GeneOne is a biotechnology company headquartered in Seoul, Korea, focused on the development of DNA-based vaccines and therapeutics.

14.     GeneOne purchased VGXI from Inovio Pharmaceuticals (formerly VGX Pharma), making VGXI its wholly owned subsidiary. At the time, VGXI operated a cGMP

manufacturing facility for DNA plasmids in The Woodlands, Texas. Following the acquisition, GeneOne registered to do business in Texas and adopted the assumed name "VGXI US."

16. In 2019, VGXI began construction on a new greenfield manufacturing facility in Deison Park, Conroe Texas to address commercial needs for DNA plasmids for the fields of gene therapy, cell therapy, as well as DNA based vaccines and therapeutics.

16. Because the Biotech Defendants required Dr. Maslow's extensive expertise as a Chief Medical Officer ("CMO"), they hired him as CMO beginning March 1, 2014, during the period in which they were actively conducting business and expanding operations in Montgomery County, Texas.

17. Subsequently, Biotech Defendants hired Roberts on December 7, 2015 for her extensive experience in research science, biological product development, and laboratory management expertise. Roberts worked as Director of Clinical Laboratory Development, later modified to Director of Clinical and Translational Research.

18. As Biotech Defendants' business expanded they hired Insperity to administer payroll and benefits for their employees, including Plaintiffs. By doing so, Insperity became a joint employer with Biotech Defendants. Biotech Defendants and Insperity are collectively referred to Defendants.

19. On October 17, 2025, Insperity notified Maslow and Roberts (collectively "Plaintiffs") that their employment relationship with Insperity was being terminated

- 4 -

retroactively as of September 27, 2025.    Notably, Plaintiffs performed work from September 27, 2025 through October 15, 2025.

20.    Biotech Defendants also ended Plaintiffs' employment.

21.    Although Maslow and Roberts worked as employees provided their services to Defendants, Defendants failed to pay them their final paychecks for pay period, September 29, 2025 to October 15, 2025.

22.    Defendants also failed to pay Plaintiffs their accrued but unused paid time off (PTO) as required by their own company policy. Under the Defendants' PTO policy, all unused and accrued PTO must be paid out upon termination.    At the time his employment was terminated, Maslow had accumulated 90.68 hours of unused PTO. Accordingly, he is owed over $10,057.62 in accrued but unused PTO.  At the time Robert's employment was terminated, she had accumulated 16.08 hours of accrued but unused PTO and is owed $1305.51.

23.    Further, prior to his termination,  Maslow had submitted $12,693.44 in expenses which were required to be reimbursed per company policy.  Defendants have also failed to pay these business expenses in breach of company policy.

24.    Despite Defendants' failure to pay Plaintiffs their final paychecks,  Plaintiffs were assured that they would be paid, and they therefore agreed to continue working for the Biotech Defendants in a new capacity as consultants.  To memorialize this new consulting relationship, Maslow entered into an independent contractor relationship with Biotech Defendants and executed a Consulting Agreement effective as of October 21, 2025

(the "Agreement"). Under the Agreement, Dr. Maslow agreed, among other things, to devote his best efforts and sufficient working time to performing services as an independent contractor for the mutual benefit of himself and the Biotech Defendants.

25.     In exchange for Maslow's consulting services, Biotech Defendants agreed to pay the following consulting fees:

### 2.0     Compensation.

2.1.    Payments. Company will pay Consultant a fee of Eight Hundred Eighty-Eight Dollars ($888.00) per Day for Consultant's services hereunder. The Weekly consulting fees will be based on 5 days a week basis. The fee will be payable bi-weekly in arrears. Company will pay the fees within 2 business days after receiving an approval from the immediate supervisor for the services provided hereunder for each month. Company shall not be liable for any other payments to Consultant including, but not limited to, any costs or expenses incurred by Consultant in the course of performing Consultant's obligations hereunder.

26.     Maslow diligently performed consulting services for Biotech Defendants from October 16, 2025 through December 13, 2025.  Maslow received payment for services performed as a consultant for the time period between October 16, 2025 and November 1, 2025. However, Biotech Defendants did not pay Maslow for consulting services performed from November 1, 2025 through December 13, 2025.

27.     From November 1, 2025 through November 15, 2025, Maslow incurred $8,880.00 in consulting fees, which were due on November 17, 2025. From November 16, 2025 through November 29, 2025, he incurred $7,992.00 in fees, which were due on December 1, 2025. From November 30, 2025 through December 13, 2025, he incurred an additional $8,880.00 in fees, which were due on December 15, 2025.

28.    Biotech Defendants failed to timely pay Maslow's consulting fees.

29.    Roberts also entered into a Consulting Agreement dated October 21, 2025. Biotech Defendants and Roberts agreed to a consulting fee of $650.00 per day.

30.    Beginning on November 2, 2025 through November 15, 2025, Roberts incurred $6500.00 in consulting fees, which were due on November 17, 2025. From November 16, 2025 through November 29, 2025, she incurred $5850.00 in fees, which were due on December 1, 2025. From November 30, 2025 through December 13, 2025, she incurred $6500.00 in fees, which were due on December 15, 2025. From December 14, 2025 through December 27, 2025 she incurred $5850.00 in fees, which were due on December 29, 2025. From December 28, 2025 through January 10, 2026, she incurred $5850.00 in fees, which were due on January 12, 2026. From January 11, 2026 through January 24, 2026, she incurred $6500.00 in fees, which were due on January 20, 2026. From January 25, 2026 through February 7, 2025 she incurred $6500.00 in fees, which were due on February 9, 2026.

31.    As a result of Defendants' conduct, Plaintiffs were forced to bring this lawsuit to recover the money under the Agreements, Biotech Defendants owes Maslow unpaid consulting fees in the amount of $25,752.00.  Biotech Defendants owe Roberts unpaid consulting fees in the amount of $43,550.00.

32.    In addition to breaching the Consulting Agreement with Maslow, Defendant VGXI breached a promissory note ("Note") executed between VGXI and Maslow on or about

October 1, 2025. Defendant did not have sufficient funds to cover payroll so VGXI negotiated a loan from Maslow in the amount of $140,000 to cover Defendant VGXI's payroll.

33. Pursuant to the Note, Maslow loaned VGXI $140,000 at an annual interest rate of 7.5%, with the loan maturing on November 1, 2025 (the "Maturity Date").

34. VGXI was required to make monthly interest payments, beginning November 1, 2025, with all subsequent payments due on the first day of each month, and required the full principal and all accrued interest to be paid on the Maturity Date.

35. Maslow retained the right, at his sole discretion, to accelerate the Note and demand immediate payment of the principal and accrued interest at any time before the Maturity Date, and VGXI was required to pay the accelerated amount within three business days.

36. As additional security, VGXI agreed to permit Maslow to place mortgages or other liens on VGXI's real or personal property upon request, and to comply with such requests within three business days; failing that, the Maslow could record such liens unilaterally and charge VGXI for associated legal fees and costs.

37. In the event of default in the making of any payment on the Loan, either of principal or interest, VGXI agreed to pay Maslow a late fee in the amount of five percent (5%) of any delinquent payment. The late fee is to be added to the amount of the delinquent payment once that payment becomes fifteen (15) days overdue. Late fees shall compound annually on any unpaid amounts, calculated from the original due date.

38. VGXI also agreed to pay all reasonable costs, expenses, and attorneys' fees incurred by Maslow in collecting on the Note, including in probate, bankruptcy, reorganization,

or other proceedings, or if the Note was placed with an attorney after default.

39.    On November 14, 2025, Defendants made a partial principal payment of $80,000 and paid $1,265.75 in interest.  As of April 16, 2026  a total of $ 63,793.15 remains owing ($60,000 in principal, $2,428.77 in interest, and $1,364.38 in late fees ).

## CAUSES OF ACTION

### I. Breach of Contract- Failure to Pay Salaried Owed

40.     Plaintiffs re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

41.     Prior to October 16, 2025, Plaintiffs and Defendants were in an at-will employment relationship.

42.     By virtue of this relationship and the parties' mutual assent, a valid and enforceable contract existed: Plaintiffs performed work and services for Defendants, and Defendants were obligated to pay Plaintiffs all earned wages at the agreed rates. The essential terms included: (a) Plaintiffs' performance of work for Defendants; (b) Defendants' obligation to pay Plaintiffs all earned wages at the agreed rates; and (c) payment of wages on the applicable paydays consistent with Texas law and Defendants' established pay practices.

43.     Plaintiffs fully performed all obligations under this agreement by working for Defendants and earning wages during the final pay period of September 29, 2025 through October 15, 2025.

44.     Under Texas law, employers must pay employees all earned wages, including final wages, in accordance with statutory requirements governing the payment of wages and

paydays. Defendants were obligated to timely pay Plaintiffs all wages earned through Plaintiffs' last day worked.

45.     Defendants breached its contractual obligations by failing and refusing to pay Plaintiffs the final paycheck for wages earned from September 29, 2025 through October 15, 2025, despite Plaintiffs' full performance and despite demand for payment.

46.     As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages, including but not limited to unpaid wages for the period of September 29, 2025 through October 15, 2025, prejudgment and post-judgment interest at the maximum rate allowed by law, and reasonable and necessary attorneys' fees and costs recoverable under Texas law, including Chapter 38 of the Texas Civil Practice and Remedies Code.

## II. Breach of Contract- Failure to Pay PTO

47.     Plaintiffs reincorporate and reallege all preceding paragraphs as though fully set forth herein.

48.      Defendants maintained a written company policy providing that employees would be paid all accrued but unused paid time off ("PTO") upon separation of employment. This policy constituted a binding and enforceable promise regarding the payment of earned PTO.

49.     A valid and enforceable contract existed between Plaintiffs and Defendants by virtue of the parties' employment relationship, mutual assent, and Defendants' written PTO policy. Under this agreement, Plaintiffs earned PTO through work performed for Defendants, and Defendants were obligated to pay Plaintiffs all accrued but unused PTO

upon termination in accordance with its policy.

50.     Plaintiffs fully performed all obligations under the employment contract by working for Defendants, accruing PTO pursuant to Defendants' policy, and satisfying all conditions necessary to vest the right to payment of accrued PTO at termination.

51.     Defendants breached the contract by failing and refusing to pay Plaintiffs the accrued but unused PTO owed at the time of separation, despite Plaintiffs having earned and vested the right to such payment under Defendants' policy.

52.     As a direct and proximate result of Defendants' breach, Plaintiffs have suffered damages, including the value of all accrued but unpaid PTO, together with prejudgment and post-judgment interest as allowed by law.

### III. Breach of Contract- Reimbursement Business Expenses

53.     Maslow and Defendants were in an employment relationship governed in part by Defendants' business expense reimbursement policy (the "Reimbursement Policy"). Under the Reimbursement Policy, employees were entitled to reimbursement for reasonable and necessary business expenses incurred in the course of performing their job duties.

54.     The Reimbursement Policy constituted a binding and enforceable promise by Defendants to reimburse employees for qualifying business expenses in accordance with its terms. Through the parties' employment relationship and mutual assent, Defendants' Reimbursement Policy created an enforceable unilateral contract: Maslow performed work and incurred reasonable and necessary business expenses for Defendants' benefit, and

Defendants, in turn, were obligated to reimburse those expenses as promised in the policy.

55.     During the course of employment, Maslow incurred business expenses totaling $ 12,693.44.  All of which were reasonable, necessary, and incurred for the benefit of Defendants. Maslow submitted timely and proper documentation for reimbursement of these expenses in accordance with the Reimbursement Policy.

56.     Despite Maslow's full compliance with the Reimbursement Policy and submission of valid expense claims, Defendants failed and refused to reimburse Maslow for the incurred business expenses as required by the policy. Defendants' failure to reimburse these expenses constitutes a breach of the contractual obligations created by the Reimbursement Policy and the parties' employment relationship.

57.     As a direct and proximate result of Defendants' breach, Maslow has suffered damages, the value of all unreimbursed business expenses, together with prejudgment and post-judgment interest as allowed by law.

### IV. Breach of Contract- Consulting Agreements

58.     Plaintiffs re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

59.     Plaintiffs and Defendants entered into a valid, enforceable written contract on or about October 21, 2025.

60.     Defendants materially breached the Agreement by failing to timely pay Plaintiffs for their consulting services.

61.     Due to Defendants' breach,  Plaintiffs have suffered damages within the

jurisdiction limits of this Court.

## V. Breach of Contract- Promissory Note

62.    Maslow re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

63.    The Note that the parties executed on October 1, 2025 is a valid and enforceable written contract.

64.    Maslow has performed all of its obligations pursuant to the parties' Note. To date, Maslow has loaned the principal sum of $140,000.00 to VGXI.

65.    VGXI made partial payment but has not paid the remaining principal owed. Thus VGXI has breached the Note by failing to pay the remaining principal and accrued interest by the Maturity Date.

66.    Plaintiff notified VGXI that the loan was required to be paid in full by November 1, 2025, and that VGXI still owed $60,863.01. Despite this notification, VGXI has not paid the remaining amount owed to Maslow.

67.    VGXI's breach of the Note is the proximate cause of Maslow's damages.

## VI. Violation of the Fair Labor Standards Act

## (Failure to Pay Minimum Wage)

68.    Plaintiffs realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

69.    At all relevant times, Plaintiffs were "employees," and Defendants were "employers" and/or joint employers of Plaintiffs within the meaning of the Fair Labor

Standards Act (FLSA), 29 U.S.C. § 201 et seq.

70.     Plaintiffs were employed by Defendants until October 15, 2025, as a salaried exempt employees.

71.     The FLSA requires covered employers to pay non-exempt employees a minimum wage for all hours worked in a workweek, 29 U.S.C. § 206. Defendants were required to pay Plaintiffs at least the applicable federal minimum wage for all hours worked.

72.     From September 29, 2025, through October 15, 2025 (the "Minimum Wage Period"), Plaintiffs worked for the benefit of Defendants and were suffered or permitted to work, but Defendants failed to pay Plaintiffs their final paycheck for this period.

73.      Defendants' failure to pay Plaintiffs their salary for the Minimum Wage Period resulted in the loss of Plaintiffs' exempt status under the FLSA, as the salary basis test was not met.

74.     As a result of losing exempt status, Plaintiffs became entitled to minimum wage protections under the FLSA for the Minimum Wage Period.

75.     Defendants' failure to pay Plaintiffs at least the minimum wage for all hours worked during the Minimum Wage Period violated 29 U.S.C. § 206.

76.      Defendants' violations were willful because they knew or showed reckless disregard for whether their pay practices complied with the FLSA.

77.     As a direct and proximate result of Defendants' FLSA violations, Plaintiffs have suffered damages in the form of unpaid minimum wages for the Minimum Wage

Period, an equal amount in liquidated damages, and is entitled to recover reasonable attorneys' fees and costs under 29 U.S.C. § 216(b).

78.     Plaintiffs seek: (a) unpaid minimum wages for the Minimum Wage Period; (b) liquidated damages in an amount equal to the unpaid wages; (c) pre- and post-judgment interest to the extent liquidated damages are not awarded; and (d) reasonable attorneys' fees and costs under 29 U.S.C. § 216(b).

**ATTORNEYS' FEES AND INTEREST**

79.     As a result of Defendants' default, Plaintiffs have found it necessary to employ Liskow & Lewis to bring suit.

80.     Because Plaintiffs are suing for breach of contract, their attorney's fees incurred in pursing their breach of contract claims against Defendants are recoverable pursuant to § 38.001 *et seq.* of the Texas Civil Practice and Remedies Code.  They are also entitled to recover reasonable attorneys' fees and costs under 29 U.S.C. § 216(b) for Defendants' FLSA violations.

81.     Furthermore, Maslow can also recover  fees incurred on the breach of the Note pursuant to § 38.001 *et seq.* of the Texas Civil Practice and Remedies Code.

82.     Therefore, Plaintiffs are entitled to recover their reasonable and necessary costs and attorney's fees in this matter.   Furthermore, in the event of an appeal, Plaintiffs will be entitled to recover their additional reasonable attorney's fees.

**CONDITIONS ATTORNEYS' FEES AND INTEREST**

83.     All conditions precedent to Plaintiffs' claims for relief have been performed

or have occurred.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully ask the Court for relief sought herein and prays that the Defendants be cited to appear and upon final trial Plaintiffs be awarded judgments against Defendants for:

a) an award of monetary damages against Defendants in favor of Plaintiffs in an amount to be determined at trial as a result of Defendants' breach of the contract for failing to pay Plaintiffs' final pay checks, PTO and reimburse business expenses;

b) an award of monetary damages against Biotech Defendants in favor of Plaintiffs in an amount to be determined at trial as a result of Biotech Defendants' breach of the Maslow's Consulting Agreement effective as of October 21, 2025 and Roberts' Consulting Agreement dated October 21, 2025;

c) an award of monetary damages against Defendant VGXI in favor of Maslow amount to be determined at trial as a result of Defendant VGXI's breach of the Promissory Note dated October 1, 2025;

d) award of monetary damages against Defendants for unpaid minimum wages, liquidated damages, fees, and costs;

e) an award to Plaintiffs of their attorney's fees, costs, and expenses in connection with this action; and

f)   such other and further relief that the Court deems just and proper.


DATED:  April 16, 2026                          Respectfully submitted,

                                                **LISKOW & LEWIS, A PLC**

                                                */s/ Laura Alaniz*
                                                **Laura Alaniz**
                                                **Attorney in Charge**
                                                Texas Bar No. 00796110
                                                S.D. Tex. No. 26370
                                                1001 Fannin Street, Suite 1800
                                                Houston, Texas  77002-6756
                                                (713) 651-2968 (telephone)
                                                (713) 651-2908 (facsimile)

                                                **ATTORNEY FOR PLAINTIFF**
                                                **JOEL MASLOW AND CHRISTINE ROBERTS**